## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JESSICA HUBERT

CIVIL ACTION

VERSUS

WAL-MART LOUISIANA, LLC                                    14-697-SDD-RLB

### <u>RULING</u>

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendant, Wal-Mart Louisiana, LLC ("Wal-Mart").  Plaintiff, Jessica Hubert ("Hubert"), has filed an *Opposition*[2] to which Wal-Mart has filed a *Reply*.[3]  For the following reasons, the Court grants Wal-Mart's *Motion*.

## I.     BACKGROUND

This slip and fall removal action arises out of Hubert's August 3, 2013 shopping experience at the Wal-Mart store located in Prairieville, Louisiana.  While shopping with her ex-husband and three year old daughter on the refrigerated food aisle of the Wal-Mart, Hubert slipped on salsa from a broken Tostitos' jar and fell to the ground landing on the right side of her body.[4]  As a result of this incident, Hubert filed a *Petition*[5] asserting negligence claims against Wal-Mart seeking damages for pain and suffering, medical expenses, and lost wages.  Wal-Mart subsequently removed this matter to federal court on diversity jurisdiction and now seeks dismissal of Hubert's claim on summary judgment.

---

[1] Rec. Doc. 15.
[2] Rec. Doc. 22.
[3] Rec. Doc. 25.
[4] In her deposition, Hubert testified that she fell toward the right side of her body and landed on her rear end.  Rec. Doc. 15-2, pp. 3-4; Rec. Doc. 22-3, p. 8.
[5] Rec. Doc. 1-2.

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[7]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[8]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[9]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[10]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[11]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[12]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the

---

[6] Fed.R.Civ.P. 56(a) (West 2015).

[7] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, at 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 150 (2000)).

[8] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, at 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25)).

[9] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, at 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[10] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, at 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[11] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[12] *Galindo v. Precision American Corp.*, 754 F.2d 1212, at 1216 (5th Cir. 1985).

summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[13]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without "any significant probative evidence tending to support the complaint.""'[14]

## III.   LAW AND ANALYSIS

### A.  La. R.S. 9:2800.6

In a diversity case, substantive state law controls.[15]  Because Hubert claims to have fallen on a merchant's premises, Louisiana's "Merchant Liability Statute" or La. R.S. § 9:2800.6, exclusively controls this matter.[16]  The Merchant Liability Act "imposes a heavy burden of proof on plaintiffs who seek damages arising out of a fall on a merchant's premises."[17]  Under the Act, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition," and this duty "includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage."[18]  The Merchant Liability Act further provides:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

---

[13] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, at 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[14] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, at 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[15] *Erie R. Co. v. Thompkins*, 304 U.S. 64 @ 467 (1938).

[16] *See, Toney v. U.S. Dept. of Army*, 207 Fed.Appx. 465, *2 (5th Cir. Nov. 30, 2006).  *See also, Piediscalzo v. Wendy's International, Inc.*, 2013 WL 5439148, *2 (E.D.La. Sept. 27, 2013)(hereinafter *Piediscalzo*).

[17] *Piediscalzo*, 2013 WL 5439148, at *2.

[18] La. R.S. 9:2800.6(A).

    (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

    (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

    (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.[19]

It is the plaintiff's burden to prove each element under the statute with no shifting of the burden.[20]  Thus, failure to prove any element is fatal to the plaintiff's cause of action.

### B. Arguments of the Parties

Wal-Mart now moves for summary judgment arguing that Hubert is unable to meet her burden of proof under La. R.S. 9:2800.6.  Specifically, Wal-Mart argues that Hubert is unable to prove that Wal-Mart "either created or had actual or constructive notice of the condition which caused the damages, prior to the occurrence."[21]  In support of its motion, Wal-Mart offers Hubert's deposition and store surveillance video footage.  Hubert responds by arguing that the presence of a Wal-Mart employee in the immediate vicinity of the area prior to Hubert's fall satisfies this element.  Hubert relies upon her deposition testimony, her *Affidavit*, and the store's video surveillance to support her argument.[22]

---

[19] La. R.S. § 9:2800.6(B).

[20] *White v. Wal-Mart Stores, Inc.*, 1997-0393(La. 9/9/97), 699 So.2d 1081, 1084-85 (hereinafter *White*).

[21] La. R.S. § 9:2800.6(B)(2).

[22] In her opposition, Hubert also claims to be relying on "Defendant's responses to Plaintiff's request for production of documents," but no such responses were submitted with the opposition memorandum and, therefore, cannot be considered by the Court.  Rec. Doc. 22, p.1.

**C. Liability or Constructive Notice Element**

In this case, Hubert proceeds on a constructive notice theory because she has presented no evidence to create an issue of material fact regarding whether a Wal-Mart employee created the condition by putting the salsa on the floor.

La. R.S. 2800.6 defines constructive notice as follows:

(C)(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

In *White v. Wal-Mart Stores, Inc.*, the seminal case on this issue, the Louisiana Supreme Court held that there is a temporal element for constructive notice: "The statute does not allow for the inference of constructive notice absence some showing of this temporal element."[23] Therefore, a claimant must not only demonstrate that a hazardous condition existed, but also that it existed for some period of time:

A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall.[24]

Because constructive notice is defined to include a mandatory temporal element, where a plaintiff relies upon constructive notice under La. R.S. 9:2800.6(B)(2), he "must come forward with positive evidence showing that the damage-causing condition existed for

---

[23] *White*, 699 So.2d at 1084.
[24] *Id.* at 1084.

some period of time, and that such time was sufficient to place the merchant on notice of its existence."[25]

Both parties point to the surveillance video footage from the evening of Hubert's fall to support their respective positions.[26]  The video footage captures a male shopper wearing a white baseball cap pushing a grocery cart down the Wal-Mart Dairy aisle next to the milk and butter cooler.[27]  This shopper travels away from the camera and moves further down the aisle before deciding to turn his cart around and retrace his steps at 7:30:42 p.m.[28]  He proceeds to push his cart a short distance but then, two seconds later, at 7:30:44 p.m., he stops his cart because he appears to notice something dripping from his cart onto his leg and the floor.[29]  He immediately pushes his cart out of the aisle and proceeds, without his cart, to find a Wal-Mart employee (7:30:51-52 p.m.).[30]  At 7:31:32 p.m., Hubert falls in the exact location where the male shopper with the white baseball cap appeared to have noticed the spilled item 47 seconds earlier.[31]  Notably, the video does not show that any Wal-Mart employees were in the area during these 47 seconds.

In the face of this video footage, Hubert claims that she can show that the salsa had existed for "some period of time" prior to her slip and fall so as to survive summary

---

[25] *Id.* at 1084-85.

[26] Rec. Doc. 15-3, *Affidavit* of Ashley Calverette, Asset Protection Manager of Wal-Mart Store #5056 in Prairieville, Louisiana.  Calverette attested to the fact that the video footage submitted from the evening of August 3, 2013 involving the Plaintiff was correct and accurate and had not been altered.  Exhibit B-A is a copy of the DVD.

[27] Exhibit B-A, part "3. Groc. Milk and Egg Coolers 1." The male shopper wearing the white baseball cap enters the surveillance footage at 7:30:25.

[28] Exhibit B-A, part "3. Groc.Milk and Egg Coolers 1."

[29] Exhibit B-A, part "3. Groc.Milk and Egg Coolers 1."

[30] Exhibit B-A, part "3. Groc.Milk and Egg Coolers 1."  The surveillance video of the grocery aisle shows the male shopper with the white baseball cap seeking out and reporting the spill to Wal-Mart employees ("1. Groc. Aisle 1, Customer Reporting Spill 1", 7:31:12-7:31:38 p.m.); ("2. Groc. Aisle 11 Customer Reporting Spill 2"; Household Paper, 7"31:05-7:31:42 p.m.).

[31] Exhibit B-A, part "3. Groc.Milk and Egg Coolers 1."

judgment.[32]   Hubert points to the video footage to show that a Wal-Mart employee was "in the area before the fall," as well as her own deposition testimony wherein she testified that an employee with his back to her was stocking eggs near the area where she fell.[33] She argues that this latter fact is important because if the salsa jar had fallen in the five to ten minutes before her fall, the employee stocking the eggs would have heard it and either cleaned it up or placed appropriate warning devices around the spill area.[34]   Hubert offers the conclusory statement that "[t]he fact that the employee in the area had not come to clean up the broken jar of salsa prior to [her fall] indicates the salsa had been there for a period of time before he began stocking at the end of the [a]isle indicating the broken jar of salsa was on the floor for an extended period of time."[35]   Hubert also contends that a visible grocery cart track through the salsa is further proof that the hazardous condition had existed for "some period of time" before her fall.  The Court disagrees on both points.

Hubert's argument that the presence of Wal-Mart employees in the area before the fall should give rise to an inference of constructive notice fails under the plain language of  La. R.S. 9:2800.6(C)(1).  As previously discussed, this statute expressly provides that the presence of an employee of the merchant in the vicinity where the condition exists does not, alone, constitute constructive notice.  Rather, it is Hubert's burden of proof to show that the damage-causing condition—the spilled salsa—existed for some time, and that such time was sufficient to place Wal-Mart on notice of its existence.[36]

---

[32] Rec. Doc. 22, p. 4.
[33] Rec. Doc. 22, p. 4; Rec. Doc. 22-3, p. 9.
[34] Rec. Doc. 22, p. 3.
[35] Rec. Doc. 22, p. 4.
[36] *White*, 699 So.2d at 1084-85.

Hubert testified in her deposition that she did not see the salsa on the floor prior to her fall.[37]  Nevertheless, the undisputed video footage demonstrates that, at the most, the broken jar of salsa was only on the floor for 47 seconds prior to Hubert's accident.  As for the second prong, Hubert has also failed to offer any evidence showing that any of the Wal-Mart employees were aware of the spill or in the position to observe the salsa prior to Hubert's fall.  In fact, in her deposition Hubert testified that she did not see, hear, or have any other evidence indicating that any Wal-Mart employees knew the salsa was on the floor before her accident.[38]  Without any additional supporting evidence, however, a determination that the mere presence of Wal-Mart employees within the vicinity of the area before her fall, either knew or should have known of the hazardous condition, is an unsupported assumption.

In *Trejos v. Greater Lakeside Corp.*, the Louisiana Court of Appeal for the Fifth Circuit was presented with a similar issue.[39]  In *Trejos*, the plaintiff was shopping on the premises of Lakeside Shopping Center in Jefferson Parish when she allegedly slipped and fell in a puddle of water while walking through the mall's food court, sustaining injuries to her knee as a result.  During a hearing at the trial court level,[40] the plaintiff testified that when she fell, she saw some mall employees cleaning trays approximately five feet away from her.  The trial court concluded that this testimony alone was sufficient to satisfy the constructive notice element of La. R.S. 9:2800.6(B).   The Louisiana Court of Appeal for the Fifth Circuit disagreed.   The appellate court rejected the implication that an

---

[37] Rec. Doc. 22-3, p. 33.  In her *Affidavit*, Hubert also attests to the fact that she did not see the broken jar of salsa or the salsa on the floor prior to her accident.  Rec. Doc. 22-2, p. 1.
[38] Rec. Doc. 22-3, p. 33.
[39] *Trejos v. Greater Lakeside Corp.*, 05-483 (La.App. 5 Cir. 1/17/06), 921 So.2d 1037.
[40] The trial court conducted a default confirmation hearing pursuant to La. C.C.P. art. 1702.

employee's proximity to the hazardous condition alone could satisfy the notice requirement. The *Trejos* court specifically held that the testimony offered failed to show that the mall employees "were aware of the liquid on the floor or if they were even in a position to observe the liquid on the floor prior to Trejos' fall."[41] The court also reiterated the plain language of La. R.S. 2800.6(C)(1), which provides that the presence of a merchant's employee in the vicinity in which the hazardous condition exists does not, alone, constitute constructive notice.[42]

Like the plaintiff in *Trejos*, Hubert has also failed to offer any evidence that would support her position that the Wal-Mart employees either knew or should have known about the spilled salsa on Wal-Mart's floor. While the video footage does show some Wal-Mart employees were in the proximity of the spilled salsa before Hubert's accident, she has not offered any evidence showing that these employees were aware of the spilled salsa or in a position to observe the salsa. Recognizing this lack of evidence, Hubert essentially requests that the Court rely on pure speculation to find constructive notice. However, the Fifth Circuit has warned that "[m]ere speculation or suggestion is not sufficient to meet [the burden of constructive notice] and courts will not infer constructive notice for purposes of summary judgment where the plaintiff's allegations are no more likely than any other potential scenario."[43] Therefore, the Court finds it would be erroneous to conclude that Hubert has satisfied her burden of proof of constructive notice.

The Court also rejects Hubert's argument that the grocery cart tracks through the salsa should give rise to the inference that the salsa was on the floor long enough to be

---

[41] *Id.* at 1040.
[42] *Id.*
[43] *Adams v. Dolgencorp, L.L.C.*, 559 Fed.Appx. 383, 386 (5th Cir. 2014)(per curiam).

discovered.  The Court reviewed the ten minutes of video footage preceding Hubert's fall. During that time period, several other shoppers passed over the exact area where Hubert fell without any incident.[44]  It is not until the male shopper wearing the white baseball cap arrives on the scene that the slippery condition comes into existence.   Initially, this shopper pushed his cart in one direction over the slip and fall site without any incident. Only after the male shopper wearing the white baseball cap swings his cart around, like he is turning on a dime, and begins to retrace his steps, does he discover the spilled salsa.  Notably, this shopper proceeds to push his cart through the spilled salsa before moving it out of the aisle.  Therefore, the fact that there are cart tracks through the salsa is actually consistent with the video footage and further supports a finding that the salsa had only been present on the floor for a short time period, or 47 seconds.

In a last ditch effort to keep her claim alive, Hubert argues that two decisions, *Stewart v. Winn Dixie*[45] and *Bagley v. Albertsons*,[46] support her position that the spill was present for a "period of time" so as to survive summary judgment.  The Court disagrees and finds these cases are completely inapplicable to the instant matter.  In *Stewart*, the Louisiana Court of Appeal for the Fifth Circuit found that the merchant had constructive notice of the hazardous condition, a broken egg, because the evidence showed that the floor buffer who had just cleaned the aisle had either disregarded the spill or did not see it, and another employee failed to adhere to aisle inspection procedures preceding the slip and fall.[47]  However, unlike *Stewart*, Hubert has offered no such evidence in this case.

---

[44] Exhibit B-A, part "3. Groc.Milk and Egg Coolers 1."(7:20:37-39; 7:22:57; 7:23:26; 7:27:43-44; 7:28:20).
[45] *Stewart v. Winn-Dixie Louisiana, Inc.*, 96-599 (La. App. 5 Cir. 12/11/96), 686 So.2d. 907.
[46] *Bagley v. Albertsons, Inc.*, 492 F.3d 328 (5th Cir. 2007).
[47] Specifically, the *Stewart* court found that the "inspection procedures were inadequate, at least on the day in question, in that the employee, whose job it was to walk down the aisles had not walked down this aisle in over two hours, but instead made aisle checks by walking down the end of the aisle and looking down the sixty foot long aisle that contained numerous displays."  *Stewart*, 686 So.2d at 913.  The *Stewart* court

In *Bagley*, the United States Court of Appeal for the Fifth Circuit recognized that the temporal showing in a slip and fall case could be based upon a reasonable inference drawn from circumstantial evidence.  The *Bagley* court found that a puddle causing the "spill covered a significant area extending through the aisle and into an adjoining back aisle" and inferred that the size and nature of the spill demonstrated that "some period of time" had passed before the plaintiff's accident.[48]  In the pending matter, such inferences are unnecessary due to the uncontroverted video footage showing that the existence of the salsa spill on Wal-Mart's floor for 47 seconds before Hubert's fall.

Based on the foregoing, the Court finds that Hubert has failed to present positive evidence to create a genuine issue of material fact as to whether Wal-Mart created or had actual or constructive knowledge of the broken jar of salsa on the floor before Hubert's accident.  Therefore, Wal-Mart's *Motion for Summary Judgment* shall be granted.

## IV.   CONCLUSION

Accordingly, the *Motion for Summary Judgment*[49] filed by Defendant Wal-Mart Louisiana, LLC is hereby GRANTED.   Plaintiff's case is dismissed with prejudice. *Judgment* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on January 29, 2016.


*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

also found that the merchant had "creat[ed] or contributed to the creation of the condition by placing the canned biscuit display above the egg display with full knowledge that the cans of biscuits sometime rolled down onto the eggs causing them to break." The *Stewart* court further concluded that Winn Dixie had "contributed to the unreasonably dangerous condition by maintaining the multi-colored tile floor which made spills more difficult to detect."

[48] *Bagley*, 492 F.3d at 331.

[49] Rec. Doc. 15.